### INGRAM, for Use and Benefit of ST. PAUL FIRE & MARINE INS. CO. v. MAGNOLIA PETROLEUM CO.

#### Civ. No. 265.

United States District Court
Middle District Tennessee,
Nashville Division.

April 20, 1953.

J. E. Travis, Nashville, Tenn., for plaintiff.

Reber Boult and James I. Vance Berry, Nashville, Tenn., for defendant.

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

## Findings of Fact

1. This action is brought by the plaintiff for the use and benefit of himself and St. Paul Fire and Marine Insurance Company. The loss suffered by plaintiff was fully covered by a policy of insurance issued by said insurance company, which company has compensated plaintiff in full for said loss. Plaintiff, Ingram, testified that, upon such payment, he executed a loan receipt by which he agreed to repay the same to the extent of any recovery which might be obtained from the defendants, but said loan receipt was not filed as an exhibit to the testimony in the record. It, therefore, results that this suit is in the nature of a subrogation proceeding.

2. On motion of the defendant, Socony-Vacuum Oil Company, this cause was dismissed as to said defendant on June 24, 1942, because the complaint failed to state a cause of action as to it. At the same time, a motion to dismiss on behalf of defendant, Magnolia Petroleum Company, was overruled, and this cause, therefore, came on to be heard against said defendant on the merits of the case.

3. Plaintiff's action is based on alleged breach of an implied and express warranty of fitness as to certain lubricating oil which defendant, Magnolia Petroleum Company, sold to complainant, Ingram, on November 21, 1938. Plaintiff was then the owner of a yacht, called the Patsea, which contained two six cylinder, one hundred horsepower, four stroke cycle engines, said engines having been manufactured and supplied by the Superior Engine Division of the National Supply Company.

4. The lubricating oil sold to plaintiff was a thirty gallon drum designated by defendant as "Gargoyle, D.T.E. oil extra heavy". Said oil had been approved by the engine builder for use in said engine and this approval gave rise to defendant's recommendation of it to plaintiff.

5. Said lubricating oil was put into use by plaintiff, Ingram, before his said yacht reached Memphis, Tennessee, and thereafter, was used continuously until engine trouble occurred off the east coast of Florida, about February 10, 1939. At this time, one of the engines threw a connecting rod at a point about 20 miles from Miami, Florida. The boat proceeded to Ft. Lauderdale, Florida, and then to Miami, Florida, after the trouble, using only the other engine. An examination of both engines then revealed that many of the moving parts had been badly scored and that extensive repairs were needed. Such examination did not reveal, however, that any of the moving parts had been burned.

6. Plaintiff contends that defendant was aware of the use to which the oil was to be put and that there was an implied warranty of fitness which became express upon defendant's assurances that the oil was properly suited for use in plaintiff's yacht.

Plaintiff further contends that the oil which defendant sold him was too heavy to properly lubricate and that this oil failed to get between the moving parts, thus causing them to rub against each other, resulting in a complete failure of lubrication and consequent damage.

In support of this position, plaintiff has offered expert testimony based on exam-

ination of the damaged engines and oil. The plaintiff's evidence that this oil was heavier than that which was used in comparable engines is based upon its appearance and upon the way the oil felt upon rubbing it between the fingers, and not by any chemical analysis.

7. The Court does not consider this explanation of the damage to be a satisfactory one. Insofar as the contention that the oil failed to get between the moving parts, the evidence reveals that if such were the case, the entire engines would have been burned up within thirty minutes' time. Since the moving parts were not burned at all, but only scored, the Court cannot accept the explanation that there was insufficient lubrication.

The Court finds further that had the oil failed to get between the moving parts of the engine, it would have been impossible for the yacht to have returned from the point of damage to Miami, Florida, without both engines being destroyed, much less for the yacht to have been able to go from Memphis to the east coast of Florida. Furthermore, the repair bill filed as an exhibit by the plaintiff indicates that only one connecting rod was replaced following the damage. Improper lubrication, as contended by plaintiff, would, on the other hand, have damaged all of the connecting rods, instead of just the one that went through the side of the motor. The Court finds that an accurate test of the weight of oil at engine temperatures cannot be obtained by an examination of the oil when it is cool, by appearance and feel.

8. In reply to the contention of plaintiff, defendant has also offered expert testimony, together with records of the history of these engines. On the basis of these records and this testimony, it appears that these engines had a long history of overheating; that, prior to the damage suffered, both engines had suffered extensive repair jobs on a number of occasions, involving tearing down the engines, and including the replacement of four reduction gears, after having the teeth from them ground up; that analytical tests of a sample of used lubricating oil taken from this engine after the accident revealed an unusually large amount of ground up metal particles in the oil; and that in the Court's opinion, these ground up particles could easily have come from the damaged reduction gears, or other damaged interior moving parts. Also, since the engines were scored and not burned and for the other reasons hereinabove set out, the Court finds that the damage resulted from the presence of such particles in the oil, rather than from the weight of the oil, and that said oil was not unfit for use in plaintiff's engines.

Conclusions of Law

1. The defendant has raised several legal questions, regarding plaintiff's right to maintain this action as a subrogation case. In view of the findings of fact heretofore noted, it appears that it will not be necessary for the Court to pass on these legal questions, and accordingly, no decision of them is made.

2. The burden of proof is on the plaintiff to show not only the existence of a warranty, express or implied, that the oil was fit for use in plaintiff's yacht, but further that the oil was in fact unfit for such use and did in fact cause the damage, which resulted.

3. Plaintiff has failed to carry this burden of proof and has failed to establish by a preponderance of the evidence that the oil was unfit or that the oil in any way contributed to the damage suffered.

4. The defendant has on the other hand, established by a preponderance of the evidence that its oil did not cause the damage, but that the damage was the result of other causes beyond defendant's control.

It is, therefore, ordered, adjudged and decreed, that this cause be, and the same hereby is, dismissed and the costs thereof are accordingly adjudged against the plaintiff.